# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **ROBERT LAMONT IRELAND**, | * | |
| **Plaintiff** | * | |
| v | * | Civil Action No. GJH-17-3061 |
| **STEPHEN T. MOYER**, *et al.*, | * | |
| **Defendants** | * | |

***

# MEMORANDUM OPINION

In response to the above-entitled civil rights complaint, Defendants Stephen T. Moyer, Kathleen Green, Dayena Corcoran, Patricia Goins-Johnson, Phillip Morgan, Mark J. Carter, Gregg Hershberger, Walter Holmes, Sergeant Roger Moore, CO II Christopher Richardson, Hearing Officer Scott Rowe, Officer Mark Schoenfelder, Stacy A. Huffman, Patricia A. Vale, and Faye Bergen[1] filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 14. Plaintiff has responded (ECF No. 18) and Defendants have replied.[2] ECF No. 20. The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6. For the reasons that follow, Defendants' motion shall be construed as a Motion for Summary Judgment and shall be granted in part and denied in part.

## I. BACKGROUND[3]

### A. Plaintiff's Allegations of Assault and Retaliation

Plaintiff Robert Lamont Ireland, a former state inmate, alleges that on October 23, 2014, while confined at the Eastern Correctional Institution (ECI), he was assaulted without justification

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of each of the Defendants' names.
[2] The pending Motions for Extension of Time (ECF Nos. 13, 16, 17, and 19) are granted nunc pro tunc.
[3] Unless otherwise stated, background facts are taken from the Complaint, ECF No. 1, and presumed to be true.

by Officers Carter, Schoenfelder, and Huffman. ECF No. 1 at. 4.[4] He alleges that Huffman used a chemical agent on him and that he was denied adequate medical care. *Id*. After he complained about the assault, he alleges he was retaliated against by correctional staff. *Id*.

In his verified opposition response, Plaintiff clarifies and explains his claims. He alleges that Officer Schoenfelder came on C-tier stating that he smelled smoke, and that he was tired of smelling smoke on C-tier and in the rec hall. Plaintiff alleges that Officer Schoenfelder then intentionally disbursed two bursts of pepper spray onto the tier and rec hall and began to laugh. ECF 18-1 at 2. Officer Huffman also allegedly dispensed pepper spray on C-tier and then ran off laughing. *Id*. Richardson then called the control center to have the fans turned on in order to spread the pepper spray around. *Id*. Plaintiff began to choke, gag, and cough as he was exposed to the spray. *Id*. He vomited on himself and when he asked Richardson for assistance, Officer Richardson allegedly mocked and laughed at him. *Id*. When Officer Williams was notified, he arranged for Plaintiff to go to the medical department at 10:10 p.m., but refused to notify supervisors or shift commanders of the incident. *Id*.

Plaintiff states that it took 25-30 minutes to be seen by medical, and that he was not properly treated or cared for in the medical department. ECF 18-1 at 2. He claims that he remained in the medical department because his blood pressure was elevated but that he was never treated for pepper-spray exposure because custody staff interfered with his medical treatment by falsely telling medical staff that he had not been exposed to pepper spray and that the pepper spray was only accidentally discharged. ECF 18-1 at 3.

As a result of the pepper-spray incident, on October 28, 2014, Plaintiff filed an administrative remedy procedure ("ARP") ECI 1849-14 alleging that Schoenfelder and Huffman

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

intentionally discharged pepper spray on C tier and that he was denied medical care for pepper spray exposure. ECF 18-1 at 3; ECF 18-2 at 2-4. The Warden dismissed the ARP, indicating that there was no documentation that Schoenfelder and Huffman intentionally discharged the pepper spray and, to the contrary, documentation showed Huffman accidently discharged the spray. *Id*. The dismissal also noted that Plaintiff had been seen and treated by medical for secondary exposure to pepper spray. ECF 18-2 at 2.

Plaintiff filed an appeal to the Commissioner. ECF No. 18-2 at 5. In the appeal, Plaintiff noted that there were a number of inmate witnesses who had not been interviewed and also indicated that Officer Schoenfelder had lied about his name during the incident. *Id*. at 6. He also alleged that Lt. Bergen failed to properly investigate his ARP complaint by not notifying the Internal Investigation Unit that a complaint of excessive force had been made against staff, failing to review the rec hall camera, and failing to interview witnesses. *Id*. On February 18, 2015, the appeal was denied. *Id*. at 8.

Prior to receiving the Commissioner's denial of his appeal, Plaintiff filed an appeal, on February 9, 2015, to the Inmate Grievance Office ("IGO"). ECF No. 18-2 at 9. On March 4, 2015, Plaintiff filed a second appeal to the IGO. *Id*. at 10. On April 7, 2015, the IGO dismissed the grievance, finding it lacking in merit. *Id*. at 22. On May 15, 2015, the IGO declined to reconsider the dismissal of Plaintiff's grievance. *Id*. at 23.

Plaintiff's allegations were ultimately forwarded to the Department of Public Safety and Correctional Services (DPSCS)-Intelligence Investigative Division (IID) for investigation. ECF No. 18-3 at 4. IID determined that Plaintiff's allegations did not meet the requirements for investigation by their office. *Id*. at 6.

Plaintiff alleges that when staff became aware of the ARP, he was "continuously bombarded with fabricated/false disciplinary/reports/shake-downs/harassed/threatened/retaliated/reprisals by ECI staff officials and supervisory staff until [he was transferred in February or March of 2015]." ECF 18-1 at 3.

As an example of the retaliation, Plaintiff explains that on December 12, 2014, Schoenfelder wrote a false disciplinary report against him and on January 8, 2015, after a hearing before Hearing Officer Rowe, he was placed on disciplinary segregation for 180 days. *Id*. at 3-4. He also lost diminution of confinement credits as well as telephone and visitation privileges. *Id*. Plaintiff's appeal of the disciplinary decision was denied by the Warden. *Id*. at 4. Plaintiff was scheduled for a parole hearing on May 4, 2015 but was denied parole due to the number of inmate rule infractions he had recently received. ECF 18-1 at 5; ECF 18-4 at 6.

Ultimately, on May 21, 2015, Patricia Goins-Johnson, Executive Director of Field Support for DPSCS, sent a Memorandum to Warden Phillip Morgan at the Maryland Correctional Training Center (MCTC), where Plaintiff was then housed. ECF 18-4 at 2. The memo vacated Plaintiff's conviction and sanctions and ordered a new hearing in front of a new Hearing Officer. *Id*. The memo explained that on December 12, 2014, Plaintiff was charged by Schoenfelder with violating rules 100 (engage in disruptive act), 104 (use intimidating, coercive, or threatening language), and 405 (disrespect or vulgar language). *Id*. A hearing was held before Hearing Officer Rowe on January 8, 2015, and Plaintiff was found guilty of violating rules 104 and 405. *Id*. At the hearing, Plaintiff submitted evidence that he contacted the Somerset County State's Attorney's Office regarding his claim that Schoenfelder had used excessive force against him on October 23, 2014, in the pepper spray incident which was forwarded to IID and then to the Warden at ECI. *Id*. Plaintiff alleged that when Schoenfelder became aware of these complaints, he engaged in a course

4

of harassment toward Plaintiff. *Id*. Rowe advised Plaintiff that he would only consider evidence regarding the date of the alleged rule infraction. *Id*. Additionally, Plaintiff timely requested inmate Anthony Webb and Lt. Bergen appear as witnesses as they were aware of instances of retaliation and harassment by Schoenfelder. *Id*. Hearing Officer Rowe did not allow the witnesses to testify because they were not witnesses to the events giving rise to the rule infraction. *Id*. In concluding the vacatur of the conviction and sanctions was proper, the memo concluded that Plaintiff's proposed defense and witness testimony should have been considered. ECF No. 18-4 at 3.

On June 22, 2015, Plaintiff's remand hearing was held before Hearing Officer Sipes and he was found not guilty of all rule violations. ECF 18-1 at 5. The written explanation of the finding stated:

> The HO finds the testimony of Ireland persuasive. HO reviewed the letter written to the states attorney a month prior to the infraction being written. There was supervisory staff that was aware of the harassment taking place. HO finds it likely there was retaliation and harassment taking place by the reporting CO. HO finds inmate not guilty of rules charged.

ECF 18-4 at 4.

Plaintiff filed ARP MCTC-0687-15 on June 22, 2015, detailing alleged misconduct by Schoenfelder. ECF 18-1 at 5; ECF 18-4 at 8. The ARP was dismissed with an indication that the matters alleged were being investigated by the IID. ECF 18-4 at 8.

B. Defendants' Response

Defendants dispute Plaintiff's account of the pepper spray incident and the subsequent allegations of retaliation. On October 23, 2014, Kathleen Green was the Warden of ECI and Officers Huffman, Richardson, Schoenfelder, and Williams were assigned to Housing Unit 3 at ECI. ECF No. 14-3, ¶ 1 (Huffman Decl.); ECF No. 14-4, ¶ 1 (Richardson Decl.); ECF No. 14-5, ¶ 1 (Schoenfelder Decl.); ECF No. 14-6, ¶ 1 (Williams Decl.); ECF No. 14-8. ¶ 1. Defendants

5

claim that at approximately 9:50 p.m., as Huffman approached the bathroom door in Housing Unit 3 to unlock the door, she dropped her keys. ECF 14-3, ¶ 3. As she bent down to pick up the key her arm pushed the trigger of her "MK-9 pepper spray unit and dispersed approximately 1-2 seconds of spray." *Id*. The unit was missing its pin which prevented accidental discharges. *Id*. She had been previously instructed not to replace the pin with a makeshift pin. ECF 14-3 at 3 (Huffman Matter of Record prepared in response to Plaintiff's ARP). Huffman reported the incident and she and Schoenfelder cleaned up the spray. ECF 14-3, ¶ 3; ECF 14-5 at 3 (Schoenfelder Matter of Record prepared in response to Plaintiff's ARP); ECF 14-6 at 3 (Williams Matter of Record prepared in response to Plaintiff's ARP).

As part of the cleaning process, the front door was opened, and the fan turned on to clear the spray. ECF 14-6 at 3. Huffman then made rounds on the tier to make sure none of the inmates were affected by the smell of the pepper spray. ECF 14-3, ¶ 3. Williams also reported to C-tier and called the medical department to report that there had been an accidental discharge of pepper spray and two inmates needed to be seen. ECF 14-6, p. 3. Inmates who reported they smelled the spray were sent to the medical department. ECF 14-3, ¶ 3; ECF 14-4 at 2 (Richardson Matter of Record prepared in response to Plaintiff's ARP).

Huffman avers that the discharge was accidental, occurred in a central area of the tier which was separated from inmate cells and recreation areas, and no inmates were close to the contaminated area. ECF 14-3, ¶ 3. Schoenfelder and Williams agree that the discharge was accidental. ECF 14-5, p. 3; ECF 14-6, p. 3.

Huffman, Richardson, Schoenfelder, Williams, and Green each deny interfering, hindering, or delaying medical care to Plaintiff or being responsible for the medical care provided to inmates. ECF 14-3, ¶ 5; ECF 14-4, ¶ 4; ECF 14-5, ¶ 4; ECF 14-6, ¶ 4; ECF 14-8, ¶¶ 2, 5. They

also deny having any intent to harm Plaintiff. ECF No. 14-3, ¶ 6; ECF No. 14-4, ¶ 5; ECF 14-5, ¶5; ECF 14-6, ¶ 5; ECF 14-8, ¶ 6. Schoenfelder reported that at the time of the incident he did not wear a name badge because his was broken. ECF 14-5, at 3. He denies giving Plaintiff a false name during the incident. *Id*.

On October 23, 2014, less than one half hour after the discharge of the pepper spray, Plaintiff was seen in the medical department due to the pepper spray exposure. ECF No. 14-7 at 10 (Medical records; Chart note completed at 10:19 p.m.). He remained in the medical unit until he stabilized. *Id*.

Plaintiff had access to medical staff by completing sick call slips. ECF No. 14-8, ¶ 3. On November 4, 2014, Plaintiff was seen in the medical department due to his complaints of nose bleeds which he reported occurred every time he touched his nose since pepper spray was used on the tier. ECF No. 14-7 at 7. Plaintiff had previously been treated for sinusitis and rhinitis in October of 2014, prior to the pepper spray incident. ECF No. 14-7 at 15, 18. He was also seen on November 5, 2014, for follow up regarding a rash which had been treated on October 15 and 22, 2014. *Id*. at 5, 11-14.

On December 23, 2014, Plaintiff was assessed by mental health staff due to his self-referral. During the assessment he talked in:

> great detail about events that have occurred at ECI since 10/23/14 when he was accidentally sprayed with pepper spray. He reported 'this jail is very retaliatory' and that he fears that he will die at ECI due to incidents similar to the [illegible] when he was sprayed with pepper spray. After multiple inquires, he expressed that he would like documentation regarding his 'stressed' mental status as a reported result of recent events since inmate has been at ECI. Inmate expressed a strong desire to be transferred. . . .

ECF 14-7 at 3.

Hearing Officer Sipes presided over the June 22, 2015 disciplinary hearing involving Plaintiff. ECF 20-1, ¶ 1 (Sipes Decl.). He recalls the hearing because he had previously been employed as a correctional officer and recognized Plaintiff; he also reviewed the record of the hearing. *Id.*, ¶ 3. Sipes explains that:

> Based on Mr. Ireland's claims and facts that I had learned from a supervisory staff member at ECI (I believe he was a major), I concluded that the information suggested it was more likely than not that the December 2014 charges against Mr. Ireland might have been retaliatory. A supervisory staff member at ECI told me that he had heard that inmates other than Mr. Ireland had claimed that Officer Schoenfelder harassed or retaliated against them. Based on this information, I concluded that supervisory staff had some awareness that Officer Schoenfelder may have harassed or retaliated against other inmates. When I wrote in the Inmate Hearing Record that "supervisory staff was aware of this harassment," I was referring to the supervisory staff member who told me that inmates other than Mr. Ireland had claimed that Officer Schoenfelder harassed or retaliated against them; thus, the supervisory officer was aware of this harassment against other inmates. I did not receive any report that Officer Schoenfelder had harassed or retaliated against Mr. Ireland or that supervisory staff was aware of any harassment or retaliation by Officer Schoenfelder against Mr. Ireland. There was no direct evidence or other evidence sufficient for me to conclude that supervisory staff had any information that Officer Schoenfelder did harass or retaliate against Mr. Ireland. I had not received any direct evidence or other evidence sufficient for me to conclude that Officer Schoenfelder did harass or retaliate against Mr. Ireland.
>
> For the purpose for the June 22, 2015, hearing, I considered it likely that, if there were reports that Officer Schoenfelder had retaliated against other inmates, then there was some likelihood that Officer Schoenfelder's December 2014 charges against Mr. Ireland might have been retaliatory. This possibility, along with the other evidence, was enough for me to conclude that, on the preponderance of the evidence standard, I should find Mr. Ireland not guilty of the charges.

ECF 20-1, ¶ 5.

## II.    STANDARD OF REVIEW

Defendants have filed their Motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th

Cir. 2007). To the extent that grounds for dismissal are based solely on the contents of the complaint, the Court may dismiss under Rule 12(b)(6) if the complaint does not allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment when matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature, *see Harrods Ltd. v.*

*Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Here, Plaintiff has not filed a Rule 56(d) affidavit or otherwise requested discovery in this matter. Under these circumstances, the Court will construe Defendants' Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### III.    DISCUSSION

A. <u>Official Capacity Claims/Supervisory Liability</u>

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend XI. In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984) ("It is

clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Moreover, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Plaintiff's claim for damages asserted under 42 U.S.C. § 1983, may not proceed against Defendants in their official capacity. Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § 1983. *Will*, 491 U.S. at 66. While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. See *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 397 (4th Cir. 1990) ("[t]he waiver of sovereign immunity in the Maryland Torts Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts."). "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 100 (emphasis in original).

To the extent Plaintiff has sued Defendants in both their personal and official capacities, his claims against them in their official capacities are subject to dismissal. In *Kentucky v. Graham,* 473 U.S. 159, 165 (1985), the Supreme Court explained "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (Quoting *Monell v. N.Y.C. Dept. of Soc. Servs.,* 436 U.S. 658, 690 (1978)) (citations omitted). Thus, official capacity claims are subject to sovereign immunity under the Eleventh Amendment. *Graham,* 473 U.S. at 167; *accord Hafer v. Melo,* 502

U.S. 21, 25. As such, Plaintiff's claims under 42 U.S.C. § 1983 for damages asserted against Defendants in their official capacity are barred.

In regard to Plaintiff's claims against Defendants in their individual capacities, he must show that Defendants "acted personally in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs*, 550 F. 2d 926, 928 (4th Cir. 1977). It is insufficient to show that subordinates of a sued official deprived Plaintiff of his rights as the doctrine of *respondeat superior* does not apply to § 1983 cases. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). If Plaintiff has not alleged any personal connection between a Defendant and a denial of their constitutional rights, the claim against that Defendant must fail. *Vinnedge*, 550 F. 2d at 928.

In order to hold Defendants Stephen T. Moyer, Dayena Corcoran, Patricia Goins-Johnson, Phillip Morgan, Gregg Herschberger, and Patricia Vale liable under a theory of supervisory liability, Plaintiff would have to establish the existence of an official policy or custom that caused a violation of his rights. *See Monell*, 436 U.S. at 690. In a § 1983 action, liability is imposed on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights. . . ." 42 U.S.C. § 1983. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Vinnedge*, 550 F.2d at 928; *Monell*, 436 U.S. at 690. Plaintiff has not alleged any conduct by Stephen T. Moyer, Dayena Corcoran, Patricia Goins-Johnson, Phillip Morgan, Gregg Herschberger, and Patricia Vale regarding his claims arising from the use of pepper spray, denial of medical care, and retaliatory conduct. As such, his complaint against these

Defendants will be dismissed.

B. <u>Use of Pepper Spray</u>

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

> In the context of the use of pepper spray by prison staff, "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis omitted). The use of pepper spray is not "per se a cruel and unusual punishment." *McCargo v. Mister*, 462 F.Supp. 813, 818 (D. Md. 1978). It may be used in order to control recalcitrant inmates. *Williams*, 77 F.3d at 763. Analysis regarding the amount of chemical agent used focuses, as with all other excessive force claims, on whether the Defendant acted with a sufficiently culpable state of mind. *Iko*, 535 F.3d at 238 (4th Cir. 2008) (citations omitted) (holding correctional officer not entitled to qualified immunity where additional chemical agent was deployed into inmate's cell after inmate attempted to comply with officer's order, did not react violently, and officer failed to remove inmate's clothes or secure medical care for inmate after chemical agent exposure).
>
> Eighth Amendment violations have been found where an officer used more than a reasonable amount of a chemical agent. *See, e.g*., *Furnace v. Sullivan*, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined

in); *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier).

*Kitchen v. Ickes*, 116 F. Supp. 3d 613, 626-27 (D. Md. 2015), *aff'd*, 644 Fed. Appx. 243 (4th Cir. 2016).

Plaintiff and Defendants present conflicting versions of the October 23, 2015 pepper spray incident. Defendants have submitted affidavits which contend that the use of pepper spray was accidental. Although Plaintiff's Complaint was not made under penalty of perjury, Plaintiff's response—in which he stated that Huffman and Schoenfeld intentionally deployed pepper spray along the tier and that Richardson and Williams laughed or covered up the event—was sworn. The allegation that pepper spray was deployed across the tier despite no threat of harm reflects an objectively unreasonable use of force. Given that Plaintiff's sworn statement is fundamentally inconsistent with Defendants' affidavits, and in view of the liberal construction afforded to Plaintiff as a pro se litigant, the Court will deny the Motion for Summary Judgment. The issue requires credibility determinations not appropriate for resolution on summary judgment. *See Anderson*, 477 U.S. at 255.

C. Denial of Medical Care

Plaintiff contends that Defendants delayed his receipt of medical care after he was exposed to the pepper spray and then interfered with the provision of medical care once he was in the medical unit. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir.

2016); *Iko*, 535 F.3d at 241. Objectively, the medical condition at issue must be serious. *See Hudson*, 503 U.S. at 9 (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994); *see also Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017). Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because 'prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Plaintiff and Defendants again present conflicting versions of the events occurring after Plaintiff's exposure to pepper spray. The parties do not dispute that Plaintiff was seen by medical staff within 30 minutes of the pepper spray exposure. Defendants have submitted affidavits which aver that they did not delay, hinder, or interfere with Plaintiff's receipt of medical care. Although Plaintiff's Complaint was not made under penalty of perjury, Plaintiff's response—in which he

15

alleges that Defendants mocked him when he requested medical care, delayed his transport to the medical unit, and then interfered with the care provided by medical staff—was sworn. Again, given that Plaintiff's sworn statement is fundamentally inconsistent with Defendants' affidavits, and in light of the liberal construction afforded to self-represented litigants, the Court will deny the Motion for Summary Judgment. The issue requires credibility determinations not appropriate for resolution on summary judgment. *See Anderson*, 477 U.S. at 255.

  D. Retaliation

Plaintiff's retaliation claim is most fairly construed as a claim that he suffered retaliation for exercising his First Amendment right to petition for the redress of grievances. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Specifically, the Fourth Circuit has held that an inmate's "right to file

a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S. Carolina Dep't of Corrections*, 855 F.3d 533, 545 (4th Cir. 2017).

Here, Plaintiff filed a grievance against correctional staff and thus engaged in protected activity under the First Amendment. As for the requirement that Defendants took an action adversely affecting First Amendment rights, Defendants seem to argue that since Plaintiff successfully had his rule infraction reversed through the administrative process, his right to exercise his First Amendment right was not infringed. However, a plaintiff can establish this element of retaliatory conduct if the defendant took an action that would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500). Plaintiff's assertion that placement on disciplinary segregation with its concomitant loss of good conduct credits, visitation and telephone privileges, along with his allegation that he was denied parole based on his having been found guilty of the rule violation, is sufficient to satisfy this requirement. *Cf. Martin*, 858 F.3d at 250 (finding that placing an inmate in administrative segregation can constitute an adverse action for purposes of a retaliation claim).

Plaintiff must also demonstrate a causal connection between his First Amendment activity and the alleged retaliatory action. *See Constantine*, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliation took place within some "temporal proximity" of that activity. *Id.* Here, Plaintiff alleges that Schoenfeld fabricated the disciplinary report after he learned that Plaintiff had filed an ARP and contacted the State's Attorney regarding the use of mace on the tier. The fact that prison officials necessarily were aware of Plaintiff's ARP and the temporal proximity of that First Amendment activity and the alleged retaliation is sufficient to support an inference of

retaliation at this stage of the proceedings. *See Constantine,* 411 F. 3d at 501 (holding that a four-month span between protected activity and retaliatory activity was sufficiently proximate to support a First Amendment retaliation claim). Because the Complaint states a plausible retaliation claim and there remain genuine disputes of material fact, dismissal or summary judgment is not warranted at this time.

E. Qualified Immunity

Defendants also argue that they are entitled to summary judgment based on qualified immunity. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "[Q]ualified immunity protects law officers from bad guesses in gray areas and it ensures that they may be held personally liable only for transgressing bright lines." *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (internal quotation marks omitted). Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this Court. The first prong is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue. *Id.* If the right was not clearly

established, the qualified immunity doctrine shields a defendant officer from liability. The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007).

Construed in the light most favorable to Plaintiff, it is clear that the conduct as alleged regarding the indiscriminate use of pepper spray on the tier, the delay and interference with medical care, and the retaliation that ensued after Plaintiff filed complaints regarding the foregoing conduct were well established as violative of an inmate's constitutional rights to be free from cruel and unusual punishment and retaliation. As such, Defendants are not entitled to qualified immunity.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment IS GRANTED IN PART AND DENIED IN PART. Plaintiff's Complaint IS DISMISSED as to Defendants Stephen T. Moyer, Dayena Corcoran, Patricia Goins-Johnson, Phillip Morgan, Gregg Herschberger, and Patricia Vale. Counsel shall be appointed to represent Plaintiff. A separate Order follows.

March 22, 2019  /s/
Date  GEORGE J. HAZEL
  UNITED STATES DISTRICT JUDGE